IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 7 |
| LAMBERT OIL COMPANY, ) | |
| INC. ) | |
| ) | CASE NO. 03-01183-WSA |
| ) | |

| | |
|---|---|
| ) | |
| WILLIAM E. CALLAHAN, JR., ) | |
| TRUSTEE FOR LAMBERT OIL ) | |
| COMPANY, INC. ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ADVERSARY PROCEEDING |
| ) | NO. 05-07043 |
| PETRO STOPPING CENTER #72 ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM DECISION

The matter before the Court is the Defendant's Motion to Alter or Amend this Court's Decision and Order entered December 28, 2005 in this adversary proceeding. Its contention is that two payments made by Lambert Oil within the agreed-to time period before Petro's account was drafted for payment by the fuel supplier were "substantially contemporaneous" and are sheltered from avoidance by 11 U.S.C. § 547(c)(1). This Motion was heard on February 1, 2006 and at that time counsel for Petro cited three decisions said to support his client's position. Those decisions are *Pine Top Insurance Co. v. Bank of America National Trust and Savings Ass'n.*, 969 F.2d 321 (7th Cir. 1992); *Tyler v. Swiss American Securities, Inc. (In re Lewellyn & Co.)*, 929 F.2d 424 (8th Cir. 1991); and *Peltz v. Hartford Life Insurance Co.*

*(In re Bridge Information Systems)*, 321 B.R. 247 (Bankr. E.D. Mo. 2005). The Court took such Motion under advisement to permit it to review such decisions. At that same hearing the Court heard the Trustee's Cross-Motion to Alter or Amend its decision, but denied such Cross-Motion at that time for reasons stated on the record because it had reviewed the Trustee's written arguments prior to such time and concluded that his oral arguments did not raise any new matter not already fully evaluated. The issue before the Court now for decision is whether it made any mistake in determining that the parties did not "intend" a "contemporaneous exchange" for new value as required by 11 U.S.C. § 547(c)(1)(A). The basis for that finding was that Lambert Oil was not expected to pay Petro at the same time as it picked up the fuel from the supplier, but only sometime before Petro's account would be drafted by the supplier, a period of approximately ten days.

*Collier on Bankruptcy* instructs us that 11 U.S.C. § 547(c)(1)(A) was the statutory codification of the rule established by the Supreme Court's decision in the case of *National City Bank of New York v. Hotchkiss*, 231 U.S. 50 (1913), which dealt with a situation where a bank made an unsecured loan in the morning but learned later in the day that the borrower was experiencing financial trouble, which resulted in its immediately demanding and receiving security for the loan. Although only a few hours had passed, the loan was held to be preferential and the transfer of security avoidable by the Trustee. 5 *Collier on Bankruptcy* ¶ 547.04[1][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Similarly, Norton's treatise asserts that the rule established by the *Hotchkiss* decision "remains valid". 3 *Norton Bankruptcy Law and Practice 2d* § 57.13, at 57-64 (2d ed. 2004). *Norton* further provides the interesting and perhaps telling anecdote that Congress in enacting the Bankruptcy Code declined to accept the

recommendation of the Commission on Bankruptcy Laws to exclude from "the definition of 'antecedent debt' any debt incurred within five days before the challenged transfer was made." Id. § 57.13, at 57-63. The Court will now review the decisions cited by Defendant's counsel.

The *Lewellyn* decision dealt with a stockbroker who had embezzled millions of dollars from the bank of which his father was president to buy large amounts of stock in a company which was speculative in nature. 929 F.2d at 427. He purchased this stock through a brokerage company which had agreed to clear the trades of his own brokerage company. *Id.* at 426. Under the normal regulations governing settlement for security purchases the customer was required to pay within seven business days of any transaction. *Id.* at 426 n.2. Under the agreement with the clearing firm Mr. Lewellyn had granted a lien on all cash and securities in the account maintained with the clearing broker. *Id.* at 426. He recently had removed 425,000 shares of stock in the company whose stock was being accumulated from this account but then was unable to pay for the most recent stock purchased when due. *Id.* In view of this situation he and the clearing company agreed that he would return to the account the 425,000 shares of stock he had just recently removed and in fact he promptly did so. *Id.* at 426-27. This was the transfer which his bankruptcy trustee later challenged. *Id.* at 427. The opinion does not suggest that there would have been any question at all about an avoidable transfer having been made if Lewellyn had been able to pay cash for the securities purchased. The return of the removed stock to the account was in substitution for the cash payment which was actually due. *Id.* at 429. The Court held that the parties did intend a contemporaneous exchange of the stock as security for the payment for the newly purchased shares which was then due but not past due. *Id.* at 428. Payment of the purchase price in cash at that time would have been safe from the Trustee's reach

so the transfer of the stock in its place struck the Court as a reasonable basis for determining that the parties did intend a contemporaneous transfer. *Id.* This Court concludes that whatever the merits of the *Lewellyn* decision, its holding is based on the very unusual facts presented and does not persuade the undersigned to alter his finding that Petro and Lambert did not intend a "contemporaneous exchange".

The *Pine Top Insurance Company* decision dealt with a bank which had issued letters of credit for an insurance company at the behest of the company's parent corporation. 969 F.2d at 323. Although there was a significant delay in the transfer of security by the insurance company to the bank, the latter's commitment letter made such security a condition of the credit being provided and the bank's loan officer testified without contradiction that he understood that the collateral would be transferred as soon as the documentation could be prepared and before the letters of credit were actually issued. *Id.* at 323, 325. It further appeared that the insurance company officers also intended for the transaction to be a secured one. *Id.* at 325. It didn't turn out that way, at least for some while as there was a significant delay in the required transfer of the collateral, but the Seventh Circuit Court of Appeals affirmed the factual findings below that the parties intended from the start that the extension of credit would be secured rather than unsecured. *Id.* The decision on appeal was based on the factual findings below that the parties had intended a contemporaneous exchange. *Id.*

The decision which would seem to provide the greatest support for the Defendant's Motion is also the most recent one, a 2005 opinion by the Bankruptcy Court for the Eastern District of Missouri in the *Bridge Information Systems* case. That decision involved pre-bankruptcy payments by the corporate debtor to the insurance company which provided

4

administration of an employee disability benefit program maintained by the corporation. 321 B.R. at 251. The method by which this program was administered was that the insurance company paid the benefits which were due under the benefit plan and then billed the client corporation for all disability payments which had been made during the preceding week. *Id.* The client then within one business day paid the insurance company by means of a wire transfer from its bank account. *Id.* This was how the plan had been operated, apparently without exception, and the payments challenged by the debtor's plan administrator had been made in such manner. *Id.* This arrangement clearly did involve an extension of credit by the insurance company on the expectation that it would be made whole within eight days by the client. This was what the parties had agreed to in writing and is exactly what they had in fact done. *Id.* at 256. The Missouri bankruptcy court held that on these facts, upon a summary judgment motion, the parties did intend a contemporaneous exchange. *Id.* at 257. While this Court believes that the decision reached the correct end result, it believes that the correct legal basis was that the payments being challenged were made in the ordinary course of business of both the debtor and the insurance company. Interestingly, the Court considered that ground of decision as well and determined that there were relevant facts in dispute which precluded summary judgment for the insurance company on that basis. *Id.* at 257-58. This Court does not agree with the specific holding of this case that under these facts the parties intended a contemporaneous exchange of new value because it seems clear that the agreement, however reasonable and appropriate it may have been, contemplated that the insurance company would extend short-term credit to the client corporation on an unsecured basis. There is no doubt that both companies in that case and perhaps this one as well intended a "substantially contemporaneous exchange," but that is not the legal standard

which must govern the decision.

In summary, this Court must make its decision based on the plain words of the statute and its understanding of what the law requires under the facts of this case, notwithstanding that the distinguished Missouri bankruptcy court apparently understands the matter differently. It is worthy of note, however, that according to the *Bridge Information Systems* decision, the debtor's plan administrator made his argument on the ground that the debtor had not stipulated that it intended a contemporaneous exchange, apparently not on the rationale utilized by this Court that the program inherently involved the intentional extension of short-term credit on an unsecured basis. *Id.* at 256. For these reasons, the Court concludes that its decision was correct as made and after due consideration should not be altered. An Order to such effect denying both the Defendant's Motion and the Trustee's Cross-Motion will be entered contemporaneously with the signing of this decision.

This 9th day of February, 2006.

William F. Stone, Jr.
UNITED STATES BANKRUPTCY JUDGE